**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Terri Riffe,** ) | **CASE NO. 1: 11 CV 266** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **vs.** ) | |
| ) | |
| **Wal-Mart Stores, Inc.,** *et al.*, ) | <u>**Memorandum of Opinion and Order**</u> |
| ) | |
| **Defendants.** ) | |

This removed case arises from the termination of plaintiff's employment in February 2010, from defendant Wal-Mart Stores, Inc. (Walmart).[1] Plaintiff alleges claims of retaliatory discharge in violation of the Fair Labor Standards Act (FLSA) and supplemental state law claims. The parties have filed cross-motions for summary judgment: Defendants' Motion for Summary Judgment (Doc. 13) and Plaintiff's Motion for Summary Judgment (Doc. 15). For the reasons stated below, Defendants' Motion for Summary Judgment is granted and

---

[1] Walmart asserts in its answer that it is incorrectly referred to in plaintiff's complaint as Wal-Mart Stores, Inc. That name is used here because it is the name appearing on the complaint and is the name Walmart used to refer to itself in its motion for summary judgment.

1

Plaintiff's Motion for Summary Judgment is denied as to plaintiff's federal claim of retaliatory discharge under the FLSA.

**Facts**

Plaintiff worked for defendant Walmart for over fifteen years. Plaintiff was first hired by Walmart in 1995 to work in Walmart's Elyria, Ohio store. (Pltf. Dep. at 30-31.) In 2006, plaintiff transferred to Walmart's Avon, Ohio store where she took the position of lead cash office associate. As lead cash office associate, plaintiff was responsible for preparing register bags to ensure that the store's cash drawers were stocked; handled and counted money; helped balance the funds from the cash drawers; investigated overages and shortages; prepared daily reports and logs monitoring the store's cash flow; and worked to ensure that incoming cash was properly counted and tracked. (Pltf. Dep., Ex. 3.) Plaintiff was the only lead cash office associate at the Avon store. (Pltf. Dep. at 42.) Plaintiff's regular work hours were Tuesday through Saturday, 5:00 a.m. to 2:00 p.m. (Pltf. Dep. at 32.)

Each day, at approximately 9:00 a.m., a financial courier arrives at the store to pick up cash and other financial documentation and transport it off-site. (Esterly Aff., ¶ 5.) Each morning, the previous day's financial accounting must be completed by associates in the cash office before the courier arrives at 9:00 a.m. Thus, the most important hours of work for cash office associates are usually 5:00 a.m. to 9:00 a.m. (*Id.* at ¶ 6.)

Plaintiff received training on various policies and procedures of Walmart when she was hired. She received further on-going computer based training as to Walmart's policies and procedures during her employment. (Pltf. Dep. at 42.) Among other policies and procedures, plaintiff was trained on Walmart's timekeeping procedures. In particular, in 2003

and again in 2004, plaintiff received computer based – or "CBL" – training called "You've earned it hourly." (Pltf. Dep. at 46.) This training explained to associates Walmart's policy of paying associates for all the time they worked, including any work associates perform "off the clock" (that is, time that is not recorded by any electronic or manual timekeeping means) and for overtime pay when authorized. The training instructs associates that they are to record their time and be paid for any work they perform "off the clock." The training gives various examples of situations where an employee works off the clock and the appropriate way for the employee to seek compensation for the work. The training explains that if an associate receives a call at home, she must complete a "time adjustment slip." The time adjustment slip requires the associate to indicate the actual time she spent on the call and the date for which the time is claimed, and to have a member of management sign the bottom of the form. (Pltf. Dep. at 79, Ex. 8.)

Beginning around 2008, Walmart also implemented an "electronic time adjustment" process by which associates could adjust their hours for various reasons. (Pltf. Dep. at 82-84.) To complete an electronic time adjustment, the associate logs onto Walmart's computer network with her internal password and electronically adjusts her hours on the computer. (Pltf. Dep. at 79-85.) For example, if an associate forgets to punch out before going to lunch, the associate can add a punch to her time sheet on the computer indicating when she started lunch for the day. (*Id.* at 84.) The electronic time adjustment procedure requires the associate to select the reason why her hours have been adjusted from a selection of options. (Esterly Aff., ¶ 9; Pltf. Dep. Ex. 13.) The options from which an associate can choose include such reasons as "forgot badge" and "missed punch." There is no option for receiving work-related

3

phone calls at home. (Esterly Aff., ¶ 9; Pltf. Dep. at 117.)

In addition, Walmart's Payroll Integrity Policy provides that associates "must accurately report and record all hour you work for the date you performed the work indicating actual start and stop times. . ." (Esterly Aff., Ex. A.)

Beginning in late 2009, management at the Avon Walmart began noticing that plaintiff had a large number of electronic time adjustments. Defendant Jody Traxler, the Asset Protection Coordinator at the Avon Walmart, was asked to investigate the situation. (Traxler Aff., ¶ 4.)

In early January and February 2010, Traxler reviewed surveillance video of plaintiff entering the store and clocking in and compared the times on the surveillance video to plaintiff's recorded clock-in times. (*Id.* at ¶ 5.) Traxler determined that on a number of occasions in January and February, plaintiff entered the store after 5:00 a.m., and then electronically "rolled-back her clock-in time to a time before she was physically present in the store." *Id.* Walmart submits an affidavit by Traxler to demonstrate the following:

• On January 7, 2010, video surveillance showed that plaintiff entered the store at 5:18 a.m. She went directly to the customer service manager's room to put her coat and purse away and entered the cash office at 5:20 a.m. She punched in at 5:46 a.m., but later completed an electronic time adjustment to roll back her punch-in time to 5:08 a.m. (Traxler Aff., ¶ 5, Ex. A.)

• On January 14, 2010, video surveillance shows that plaintiff entered the Avon Walmart at 5:51 a.m. Plaintiff did not punch-in until 6:50 a.m., but later electronically adjusted her punch-in time to 5:30 a.m. (*Id.*)

4

• On January 19, 2010, plaintiff punched in at 5:18 a.m., but electronically adjusted her punch-in time to 5:09 a.m.  (*Id.*)

• On February 3, 2010, plaintiff entered the store at 5:13 a.m., punched in at 5:15 a.m., and later electronically adjusted her time to 5:07 a.m. (*Id.*, Pltf. Dep. at 118.)

• On February 10, 2010, plaintiff left the cash office for the day at 12:52 p.m., although she was scheduled to work until 1:00 that day [due to "cutting hours."]  Plaintiff did not punch out that day but later electronically adjusted her punch-out time to 2:17 p.m.  (Ex. A.)

Plaintiff indicated that she completed the electronic time adjustments because she forgot her badge.  (Pltf. Dep. 118.)

On February 25, 2010, Defendant Randy McCarty (the Store Manager), Defendant Melodie Esterly (the Assistant Store Manager), and Defendant Jody Traxler met with plaintiff.  (Pltf. Dep. at 94.)  At this meeting, McCarty asked plaintiff if she understood Walmart's procedures for clocking in and out, and plaintiff stated that she did.  (*Id.* at 94, 96.)  McCarty then stated that "there had been some problems that had been brought to his attention" and that Walmart had evidence that plaintiff was "trying to put in for time" that she had not worked.  (*Id.* at 94.)  Plaintiff asked to see the evidence.  McCarty did not show plaintiff any evidence but told plaintiff that Walmart was terminating her for misconduct.  Plaintiff was asked to return her badge and discount card and was escorted out of the store by Esterly and Traxler.  (Pltf. Dep. at 101.)

Plaintiff testified that she did not "steal" time from Walmart in making the electronic time adjustments.  Rather, plaintiff testified that she completed the electronic time

5

adjustments in order to be paid for handling the after-hours work calls made to her at home by other Walmart employees as her supervisors instructed her to do .

Plaintiff testified she was the most experienced, "go to" person in the cash office. After a reorganization at Walmart, she started receiving frequent calls at her home seeking assistance from her about cash office problems beginning in late 2008 and continuing into 2009 and 2010. (Pltf. Dep. at 53.) Plaintiff testified that she repeatedly reported and complained to her supervisors about these frequent after-hours calls to her at home. (Pltf. Dep. at 48-49.) According to plaintiff, her supervisors did nothing to stop the calls but simply told plaintiff to make sure that she was compensated for her time. (Pltf. Dep. at 56-59.) Plaintiff's supervisors did not specifically tell her to obtain compensation for the after-hours calls by making electronic time adjustments, but plaintiff's supervisors did tell her that she should make sure that she was paid for her time. (Pltf. Dep. at 70.)  Plaintiff testified that in making the electronic payroll time adjustments, she was following the "new" electronic time adjustment policy implemented in 2008 as to which she and all other employees received training and were generally instructed to use by Walmart's Personnel Manager, Sue Walling. (Pltf. Dep. at 90.) Plaintiff admitted that Ms. Walling did not specifically tell plaintiff that she could seek pay for the phone calls she handled at home by making electronic time adjustments. However, plaintiff testified that it was her understanding that the electronic time adjustments could be used for this purpose. (Pltf. Dep. at 110.) Plaintiff did not keep written records of the time she spent on calls at home. (Pltf. Dep. at 59.)

Walmart submits evidence that if any associate received a call at home, the associate was required to complete a written time adjustment slip signed by a manager with the actual

6

start and stop time included on the time adjustment slip.  The associate could not claim pay for work-related calls using the electronic time adjustment system, which does not list time spent on work-related calls at home as an "adjustment reason."  (Esterly Aff., ¶¶ 8, 9.)

After her termination, plaintiff requested a meeting to discuss her termination pursuant to Walmart's "Open Door" process, which encourages associates to raise complaints and concerns about their work environment and prohibits retaliation for utilizing the Open Door procedures.  (Pltf. Dep. at 46-47; 124-25.)  Plaintiff, Esterly, Traxler, and Defendant Chris Hubbard, Walmart's Market Manager, were present at the Open Door meeting.  During the Open Door meeting, plaintiff admitted that she made the electronic time adjustments but explained that she made them to claim pay for time spent on work-related calls at home. (Pltf. Dep. at 126.)  Ms. Esterly and Ms. Traxler informed Hubbard of the basis for plaintiff's termination –  that plaintiff had been showing up late for work, clocking-in, and then electronically adjusting her time backwards and that Traxler's investigation indicated that plaintiff was selecting "forgot badge" as the reason for her adjustments.  (Def. Mot., Hubbard Aff. at ¶ 4.)  Mr. Hubbard made the decision to uphold plaintiff's termination because the information presented to him at the Open Door meeting led him to believe that plaintiff violated Walmart policy in that plaintiff did not allege that anyone told her to claim pay for the work-related calls using the electronic time adjustment system; plaintiff did not ask a manager whether it was appropriate to use the electronic system to claim the time; plaintiff selected "forgot badge" – an untrue reason – as the reason for her electronic adjustments; and plaintiff did not keep records of her calls or the actual hours she worked and did not present phone records to corroborate her claim that the electronic adjustments were made in any

7

effort to claim pay for time spent on work-related calls. (Hubbard Aff.)

Plaintiff filed this action on December 29, 2010, alleging five claims for relief against Walmart, McCarty, Hubbard, Esterly, and Traxler. Plaintiff alleges a federal claim of retaliation under the Fair Labor Standards Act (FLSA) (first claim for relief). In addition, plaintiff alleges state law claims for wrongful termination in violation of public policy (second and fourth claims for relief); violations of Ohio Revised Code §§ 4111.13 and 4111.14 (third claim for relief); and defamation (fifth claim for relief).

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986). In order

to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

**Discussion**

*Retaliatory Discharge under the FLSA*

Plaintiff contends she was illegally terminated by Walmart in retaliation for seeking pay from Walmart for off the clock overtime work in violation of the FLSA.  The FLSA sets forth employment rules concerning minimum wages, maximum hours, and overtime pay.  29 U.S.C. § 201 *et seq*.  The FLSA forbids retaliation by "discharg[ing]" or "in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).  Among its prohibitions, the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Claims of retaliation under the FLSA are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  On a motion for summary judgment, the district court considers whether there is sufficient evidence to create a genuine

9

dispute at each stage of the *McDonnell Douglas* inquiry. The plaintiff must first submit evidence from which a reasonable jury could conclude that a *prima facie* case of discrimination has been established. The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Pettit v. Steppingstone, Center for the Potentially Gifted*, Case No. 09-2260, 2011 WL 2646550, at * 4-5 (6th Cir. July 7, 2011).

To make out a *prima facie* case of retaliation, the plaintiff must prove that: (1) she engaged in protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

Walmart contends it is entitled to summary judgment on plaintiff's FLSA claim for two reasons. First, plaintiff cannot establish a *prima facie* case of retaliation under the FLSA and second, even if a *prima facie* case were established, it terminated plaintiff's employment for legitimate, nondiscriminatory reasons that plaintiff cannot demonstrate were a pretext for discriminatory retaliation.

As to the *prima facie* case, Walmart contends plaintiff cannot demonstrate that she engaged in "protected activity" under the FLSA's anti-retaliation provision because she did not "file any complaint" under or related to the FLSA. Although Walmart concedes that an informal, internal complaint by an employee regarding the FLSA may constitute statutorily protected activity for purposes of the FLSA's anti-retaliation provision, Walmart cites

10

authority supporting the proposition that, in order to constitute protected activity, an employee's informal complaint must "concern some violation of law."  An employee's complaint expressing a "vague expression of discontent" is not sufficient.  (Def. Mot. at 13, citing *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 625-26 (5th Cir. 2008).)

The Supreme Court recently addressed the relevant standard in *Kasten v. Saint-Gobain Performance Plastics Corporation*, 131 S. Ct. 1325, 1335 (2011).  In *Kasten*, the Supreme Court held that the anti-retaliation provision of the FLSA protects oral as well as written complaints by employees.  But the Supreme Court stated that the employee's complaint "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection."  *Kasten*, 131 S. Ct. at 1335.

> More fully, the Supreme Court held:
>
> We agree with [defendant] that the statute requires fair notice.  Although dictionary definitions, statutes, regulations, and judicial opinions we considered
> . . . do not distinguish between writings and oral statements, they do suggest that a "filing" is a serious occasion, rather than a triviality.  As such, the phrase "filed any complaint" contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns.
>
> Moreover, the statute prohibits employers from discriminating against an employee "*because* such employee has filed any complaint." § 215(a)(3) (emphasis added).  And it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint.  But we also believe that a fair notice requirement does not necessarily mean that notice must be in writing.
>
> At oral argument, the Government said that a complaint is "filed" when "a reasonable, objective person would have understood the employee to have put the employer on notice that [the] employee is asserting statutory rights under

11

>   the [Act]." Tr. of Oral Arg. 23, 26. We agree. To fall within the scope of the
>   antiretaliation provision, a complaint must be sufficiently clear and detailed for
>   a reasonable employer to understand it, in light of both content and context, as
>   an assertion of rights protected by the [FLSA] and a call for their protection."

*Kasten*, 131 S. Ct. at 1335.

Defendants contend the only "complaints" plaintiff made to her supervisors during her time at Walmart were complaints about receiving telephone calls at home from associates who needed assistance in the cash office. Defendants contend these complaints are insufficient to trigger the anti-retaliation provision of the FLSA because plaintiff never complained of a violation of the FLSA, and handling phone calls at home is not itself a violation. The Court agrees. Plaintiff's complaints of receiving calls at home, and her conduct in seeking pay for her time by making electronic time adjustments using the explanation "forgot badge," do not constitute a "sufficiently clear and detailed" complaint "for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." *Kasten*, 131 S. Ct. at 1335.

Plaintiff contends in her opposition brief and in her brief in support of her own summary judgment motion that she engaged in statutorily protected activity "by complaining about being unable to get paid overtime for her after hours work and by entering her payroll record adjustments as instructed by Wal-Mart." (Pltf. Opp. at 2.) However, plaintiff fails to cite to pertinent, admissible evidence in the record supporting her assertion that she complained about "being unable to get paid overtime."[2] Defendants acknowledge that

---

2

    "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for

plaintiff has submitted an affidavit in support of her motion for summary judgment in which plaintiff states that she raised "overtime hours and compensation issues" with salaried management. (*See* Pltf. Aff., ¶ 14.) But defendants correctly argue that this affidavit testimony should be disregarded because it contradicts plaintiff's earlier deposition testimony. Specifically, when plaintiff was asked in her deposition about the complaints she made to her supervisors, plaintiff did not testify that she complained about failing to receive proper overtime or other compensation. (*See* Pltf. Dep. at 47-49.) Rather, plaintiff testified that she complained to her supervisors only about receiving frequent calls at home when she was off the clock and was not happy about that. She testified that her supervisors told her that she should make sure she was paid for her time, and she sought to do this by making electronic time adjustments to her time records. Plaintiff's assertions in her affidavit that she complained about not receiving "overtime" pay characterizes a situation where a deponent was specifically questioned about a key factual issue in a deposition and then attempts to change her testimony in a later affidavit. Therefore, plaintiff's affidavit testimony as to this issue is properly disregarded on summary judgment. *See Reid v. Sears*, 790 F.2d 453, 460 (6th Cir. 1986).[3]

In her briefs, plaintiff does not cite legal authority demonstrating that she adequately

---

some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

[3] Defendants move to strike multiple portions of plaintiff's affidavit. (Doc. 19.) Defendants' motion to strike is granted to the extent that plaintiffs' affidavit, as discussed above, changes the testimony that plaintiff gave in her deposition as to the complaints she made to supervisors.

filed a "complaint" under the FLSA's anti-retaliation provision.  Plaintiff cites authority supporting the propositions that informal and oral complaints by an employee are sufficient.  (Pltf. Opp. at 2, citing *Kasten*, 131 S. Ct. 1325, and *EEOC v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir. 1992).)  However, plaintiff's complaints are not insufficient because they were oral or informal; rather, they are insufficient because they are not framed in terms of an FLSA violation as required by *Kasten*.  The complaints plaintiff testified she made to her supervisors could not have reasonably been perceived by defendants as a complaint that plaintiff was not being paid in accordance with the requirements of the FLSA or that defendants otherwise violated the FLSA.[4]  Defendants' argument is persuasive that plaintiff has failed to demonstrate a *prima facie* case.

Even assuming plaintiff's complaints are sufficient to demonstrate a *prima facie* case and trigger the anti-retaliation provision of the FLSA, defendants have come forward with evidence, in particular Mr. Hubbard's affidavit, demonstrating that Walmart had legitimate, non-discriminatory reasons for terminating plaintiff.  Walmart found that plaintiff was arriving late to work without permission and improperly using electronic time adjustments to

---

[4] Plaintiff testified in her deposition that she began to think she should have been paid overtime for the phone calls she handled while off duty because she was regularly scheduled for forty hours of regular work per week; therefore, any call she took at home would automatically put her into overtime.  Plaintiff also repeatedly argues in her briefs that Walmart had a "*de facto*" illegal policy of "cutting time" when employees were approaching forty hours in a given workweek and that this policy violated Walmart's obligations under the FLSA.  Apart from failing to cite legal authority demonstrating that it is illegal for an employer to cut or reduce employees' hours so as to avoid the employees' working more than 40 hours in a workweek or that Walmart's records do not accurately reflect the time its employees actually worked, plaintiff does not point to admissible evidence in the record that she made complaints of this nature to the defendants.  Therefore, plaintiff has not demonstrated a *prima facie* case.

14

roll back her start time while stating an untrue reason ("forgot badge") for making electronic adjustments. In addition, plaintiff did not keep records of her actual work time as Walmart's policies require.

To raise a genuine issue of fact of pretext and defeat a summary judgment motion, the plaintiff must show that (1) the employer's proffered reason for an adverse employment action had no basis in fact; (2) the proffered reason did not actually motivate plaintiff's discharge; or (3) the proffered reason was insufficient to motivate the discharge. *Adair*, 452 F.3d at 491.

In her briefs, plaintiff claims pretext exists because Walmart's justifications for terminating her "has evolved to a multitude of changing pretextual reasons; beginning first as payroll time theft, then gross misconduct, then absenteeism excess tardies, and finally a failure to follow Wal-Mart policy." (Pltf. Opp. at 12; *see also* Pltf. Mot. at 10-11.)

Plaintiff's assertions are insufficient to demonstrate pretext. Except for citing evidence (her deposition) that "Excessive Absences and/or Tardies" was stated as the reason for plaintiff's termination on her Exit Interview form, plaintiff does not support her position that Walmart gave "multiple changing pretextual reasons" for her termination with any relevant analysis or citation to supporting evidence in the record. As defendants point out, plaintiff testified in her deposition that "fixing . . . punches for time not worked" was the "only reason" she was given by anyone at Walmart for her termination. (Pltf. Dep. at 129-130.) This explanation is entirely consistent with any representations Walmart may have also made that plaintiff was terminated for claiming pay for time not worked (as plaintiff characterizes it, "payroll time theft"), failure to follow Walmart policy, and gross misconduct.

15

As to the fact that plaintiff's Exit Interview form stated that plaintiff was terminated for "Excessive Absences and/or Tardies," plaintiff does not explain how this fact alone demonstrates pretext, and defendants have submitted evidence indicating that this information on plaintiff's exit interview form was a "clerical error."  (Doc. 18, Ex. 1, Hubbard Aff., ¶ 5.)  Indeed, plaintiff testified in her deposition that no one ever told her that her termination had anything to do with absences or tardies.  (Ptlf. Dep. at 130.)  The mere fact that "Excessive Absences and/or Tardies" was stated on plaintiff's Exit Interview Form alone is insufficient to support a reasonable finding that (1) Walmart's proffered reasons for terminating plaintiff had no basis in fact; (2) the reasons did not actually motivate plaintiff's discharge; or (3) that the proffered reasons were insufficient to motivate the discharge.[5]

In that plaintiff has failed to point to evidence demonstrating a genuine issue of fact regarding pretext in her motion for summary judgment and in her brief opposing defendants' motion, plaintiff's FLSA retaliation claim fails.

For the reasons stated above, defendants have demonstrated that they are entitled to summary judgment on plaintiff's claim of retaliatory discharge under the FLSA, and plaintiff has failed to come forward with sufficient evidence to make out a claim.  Accordingly,

---

[5]

Plaintiff argues throughout her briefs that she was a good, fifteen year employee of Walmart and genuinely believed she could seek pay for her work off the clock by making electronic adjustments and was not trying to seek pay for time she did not work.  Even assuming that plaintiff's assertions are true, it is Walmart's prerogative to terminate plaintiff's employment for legitimate, nondiscriminatory reasons, and it is plaintiff's burden to demonstrate that Walmart's asserted legitimate, non-discriminatory reasons are pretextual.  Plaintiff's beliefs that she was entering her time correctly and that Walmart should not have terminated her outright for her conduct are not sufficient to demonstrate pretext.  They do not demonstrate that Walmart's justifications for terminating her had no basis in fact, were insufficient to motivate a discharge, or did not actually motivate her discharge.

16

defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied as to plaintiff's first claim for relief.

Generally, when all federal claims are dismissed before trial, the state law claims should ordinarily be dismissed or remanded to state court if the action was removed. *See Musson Theatrical, Inc. v. Federal Express Corporation*, 89 F.3d 1244, 1254-55 (6th Cir. 1998). In the absence of a viable federal claim under the FLSA in this case, the Court finds that plaintiff's remaining state law claims should be remanded to state court where they were originally brought. A state court is better suited to resolve plaintiff's alleged state law claims, in particular her claims under Ohio Rev. Code §§ 4111.13 and 4111.14.

**Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied as to plaintiff's federal FLSA retaliation claim. Plaintiff's remaining state law claims are remanded to state court.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/24/12